**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| PANTAURUS LLC, | § | |
| | § | |
| Plaintiff, | § | C.A. No. 1:14-CV-00512-RC |
| | § | |
| v. | § | PATENT CASE |
| | § | |
| ADOBE SYSTEMS INCORPORATED, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

**DEFENDANT ADOBE SYSTEMS INCORPORATED'S MOTION TO
TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE
<u>NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)</u>**

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................... 2

    A.    PanTaurus was Incorporated in this District for Purposes of this Litigation ......... 2

    B.    Witnesses and Documents Regarding Adobe's Accused Instrumentalities are Located in Northern California ........................................................................ 3

    C.    Key Third-Party Witnesses with Relevant and Unique Knowledge Regarding the Development of the Accused Instrumentalities Reside in the Northern District of California ................................................................................ 4

    D.    Two Other Defendants Have Also Moved to Transfer to the Northern District of California ........................................................................................... 5

III.    ARGUMENT ...................................................................................................... 6

    A.    Venue is Proper in the Northern District of California ........................................ 7

    B.    Private Interest Factors Strongly Favor Transfer to the Northern District of California ......................................................................................................... 8

    C.    Public Interest Factors Support Transfer to the Northern District of California ....................................................................................................... 14

IV.    CONCLUSION ................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)........................................................................12

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 (E.D. Tex. 2013).............................................................10

*Blue Spike, LLC v. Adobe Sys., Inc. et al.*,
   Nos. 6:12-cv-499 and 6:12-cv-564,
   014 U.S. Dist. LEXIS 50781 (E.D. Tex. Mar. 13, 2014)...................................6

*Digital Reg of Tex. LLC v. Adobe Sys., Inc.*,
   Case No. 6:11-cv-305, 2012 U.S. Dist. LEXIS 114452 (E.D. Tex. Mar. 28, 2012) ...............7

*FutureVision.com, LLC v. Time Warner Cable, Inc.*,
   Case No. 6:12-cv-386, 2013 U.S. Dist. LEXIS 144601 (E.D. Tex. Apr. 22, 2013)..............7

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009).....................................................................8, 10

*GeoTag, Inc. v Zoosk, Inc.*,
   No. 2:11-cv-403-MHS ...................................................................................13

*Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*,
   321 F.2d 53 (5th Cir. 1963)  ...........................................................................6

*Ingeniador, LLC v. Adobe Sys., Inc.*,
   Case No. 2:12-cv-00805-JRG, 2014 U.S. Dist. LEXIS 3308 (E.D. Tex. Jan. 10, 2014) ..........7

*Internet Machs. LLC v. Alienware Corp.*,
   No. 10-cv-023, 2011 U.S. Dist. LEXIS 66207 (E.D. Tex. Jun 7, 2011) ................................13

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011)........................................................................14

*In re Morgan Stanley*,
   417 Fed. App'x. 947 (Fed. Cir. 2011)..............................................................13

*Network Prot. Sciences, LLC v. Juniper Networks, Inc.*,
   No. 10-cv-224-JRG, 2012 U.S. Dist. LEXIS 7575 (E.D. Tex. Jan. 23, 2012) ......................15

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Nintendo Co., Ltd.,*
    589 F.3d 1194 (Fed. Cir. 2009)...........................................................................7

*Optimum Power Solutions LLC v. Apple, Inc.,*
    794 F. Supp. 2d 696 (E.D. Tex. 2011) ............................................................7, 9

*PanTaurus LLC v. Hulu, LLC,*
    Case No. 1:14-cv-445-RC...............................................................................5

*PanTaurus v. OPower, Inc.,*
    Case No. 1:14-cv-517-RC...............................................................................5

*Patent Harbor, LLC v. Twentieth Century Fox Home Entm't, LLC,*
    No. 6:10-CV-607, 2012 U.S. Dist. LEXIS 73149 (E.D. Tex. May 25, 2012).......................13

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981)...................................................................................14

*Promote Innovation LLC v. Ortho-McNeil Pharm., LLC,*
    No. 2:10-CV-109, 2011 U.S. Dist. LEXIS 15408 (E.D. Tex. Jan. 12, 2011).........................11

*Software Rights Archive, LLC v. Google, Inc.,*
    No. 2:07-CV-511, 2010 U.S. Dist. LEXIS 73972 (E.D. Tex. July 22, 2010) ........................12

*In re TS Tech USA Corp.,*
    551 F.3d 1315 (Fed. Cir. 2008).....................................................................7, 12

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) ...................................................................6, 7, 8, 14

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) (en banc) ............................................................6, 7

*In re Zimmer Holdings, Inc.,*
    609 F.3d 1378 (Fed. Cir. 2010).......................................................................12

**Statutes**

28 U.S.C. §§ 1331 and 1338(a)............................................................................8

28 U.S.C. § 1391(b) ......................................................................................8

28 U.S.C. § 1404(a) ...........................................................................1, 6, 11, 13

Pursuant to 28 U.S.C. § 1404(a), Defendant Adobe Systems Incorporated ("Adobe") respectively moves to transfer this action to the United States District Court for the Northern District of California.

## I.    <u>INTRODUCTION</u>

This case has no real connection to this District.  Adobe is a corporation headquartered in San Jose, California. The witnesses knowledgeable about the accused technology in this case reside in the Northern District of California, and work in Adobe's facilities in San Jose and San Francisco, California, where they can most easily access documents relating to Adobe's use of the technology.  The third-party witnesses most knowledgeable about the development of the accused instrumentalities and the relevant prior art are likewise located in Northern California.

In contrast, Plaintiff PanTaurus LLC ("PanTaurus") is a litigation-inspired entity with no significant connection to the State of Texas other than corporate formation.  PanTaurus appears to have formed as a Texas LLC to acquire the patent-in-suit and file numerous litigations.

PanTaurus accuses Adobe of infringing U.S. Patent No. 6,272,533 ("the '533 patent") based on Adobe's use of open source software developed by and acquired from companies located in Northern California.  PanTaurus has thus far asserted this patent against 55 out-of-state defendants, 19 of whom are based in the Northern District of California, and two of whom have already moved this Court to transfer to the Northern District of California.  This patent action has no connection to the Eastern District of Texas other than PanTaurus's many lawsuits filed here.  The Northern District of California, on the other hand, has a strong connection to the claims in this case.  Consistent with these facts and this District's prior decisions, the Northern District of California is the "clearly more convenient" forum for this dispute.

Accordingly, Adobe requests that this Court grant a transfer under 28 U.S.C. § 1404(a) to the Northern District of California.

## II.    FACTUAL BACKGROUND

### A.    PanTaurus was Incorporated in this District for Purposes of this Litigation

PanTaurus was formed as a Texas LLC in June 2013, less than one month before it acquired the '533 patent in July 2013.  Declaration of Robert Watkins in Support of Adobe Systems Inc.'s Motion to Transfer Venue ("Watkins Decl."), ¶¶ 2-3; Exs. A-B.  PanTaurus accuses Adobe (and a number of other Defendants) of infringing the '533 patent by using systems with Hadoop-compatible file systems (the "Accused Instrumentalities"):

> 13.  Upon information and belief, Adobe has infringed and continues to directly infringe one or more claims of the '533 Patent, including at least claim 29, by making, having made and/or using secure computer systems covered by one or more claims of the '533 Patent, including without limitation digital computer systems comprising one or more Hadoop-compatible file systems (the "Accused Instrumentalities"). A Hadoop distributed file system, often referred to by the acronym "HDFS," is a distributed file system that includes computer hardware (*e.g.*, servers and memory) and computer software for performing program functions.

Dkt. 1, Complaint at ¶ 13.

PanTaurus is a non-practicing entity with no apparent business in the Eastern District of Texas other than litigation.  To date, PanTaurus has filed 56 cases in this District, alleging infringement by a wide variety of unrelated secure data storage products and services.  Watkins Decl., ¶ 4; Ex. C.  On September 3, 2013, less than two months after acquiring the '533 patent, PanTaurus filed fifteen actions in this district (the "First Wave Cases") alleging infringement of the '533 patent.  *See* Case Nos. 1:13-cv-00538-52, Watkins Decl., ¶ 4; Ex. C.  The '533 patent's only named inventor appears to reside in Alexandria, Virginia.  Watkins Decl., ¶ 5; Ex. D.  All First Wave Cases are believed to have settled and were dismissed.  *Id.*, ¶ 4; Ex. C.

On April 23, 2014, PanTaurus filed fifteen new infringement actions ("Second Wave"), many of which have already settled and been dismissed.  Case Nos. 1:14-cv-226-40, Watkins

Decl., ¶ 4; Ex. C.  On September 2, 2014, PanTaurus filed a "Third Wave" of twelve cases, including cases against California-based Hulu, LLC (Los Angeles, CA), Facebook, Inc. (Menlo Park, CA), and LinkedIn Corp. (Mountain View, CA).  *See* Case Nos. 1:14-cv-439-50, *Id*.  On October 10, 2014, PanTaurus filed a "Fourth Wave" of thirteen cases, including this case against Adobe.  *See* Case Nos. 1:14-cv-511-23, *Id*.

**B.    Witnesses and Documents Regarding Adobe's Accused Instrumentalities are Located in Northern California**

Adobe's headquarters, located in San Jose, California, together with its significant presence in San Francisco, California, form the core of Adobe's strategic center.  Declaration of Pradeep Javangula in Support of Adobe Systems Inc.'s Mot. to Transfer Venue ("Javangula Decl."), ¶ 1.  Adobe employs over 3,000 people in its Northern California offices, including staff, engineers, product managers, and executives.  *Id*.

The Adobe employees most knowledgeable about Adobe's use of the accused Hadoop Distributed File System ("HDFS") are located in San Jose and San Francisco.  *Id.*, ¶ 6.  None are in Texas.  *Id.*  To date, Adobe has determined that documents relating to the development, operation, maintenance, marketing, and financial performance of the Accused Instrumentalities are most easily accessible in San Jose and San Francisco where the engineers, product managers, and executives who are knowledgeable about such documents reside.  *Id*., ¶¶ 5-6.  Adobe does not maintain any operations or facilities in the Eastern District of Texas that are involved in design or development of the Accused Instrumentalities.  *Id*., ¶ 7.  While Adobe has employees located in Texas, none works on design, development, product management, or marketing of the Accused Instrumentalities.  *Id.*, ¶ 8.

As demonstrated above, the procurement, design, development, product management, and marketing of the Accused Instrumentalities occurs primarily in San Jose and San Francisco,

California.

**C.** **Key Third-Party Witnesses with Relevant and Unique Knowledge Regarding the Development of the Accused Instrumentalities Reside in the Northern District of California**

Like many other Defendants in the Third and Fourth Wave cases, Adobe is accused of infringing the '533 patent due to its use of Hadoop Distributed File System software, or "HDFS." Hadoop and HDFS were originally developed by the Apache Software Foundation.  Watkins Decl., ¶ 6; Ex. E.  Many members of the Apache Software Foundation reside in Northern California (including some California-based Adobe employees).  Watkins Decl., ¶ 7; Ex. F. Adobe obtained the HDFS software packages used in its Accused Instrumentalities from Cloudera, Inc, which is based in Palo Alto, California.  Javangula Decl., ¶¶ 9-11, Ex. A; Watkins Decl., ¶¶ 6, 8-9, Exs. E, G-H.  Thus, critical witnesses and technical documents relevant to the design, development, and operation of the software packages used in the Accused Instrumentalities are located in the Northern District of California.  These third-party witnesses cannot be compelled to testify in the Eastern District of Texas because they are located more than 100 miles away.

Additionally, multiple material prior art sources, including Sun Microsystems, Inc. ("Sun") and Network Appliance, Inc. ("NetApp"), have strong connections to Northern California and are likely to have relevant prior art in their possession.  Sun began implementing its Network File System ("NFS") by at least March of 1984, in Mountain View, California. Watkins Decl., ¶¶ 11-12; Exs. J-K.  In 2010, Sun was acquired by Oracle Corporation, which is headquartered in Redwood Shores, California.  *Id*., ¶¶ 13-14; Exs. L-M.  NetApp, the assignee of prior art U.S. Patent No. 6,457,130, is headquartered in Sunnyvale, California, and each of the named inventors appear to reside in nearby Northern California cities.  *Id*., ¶¶ 17-23; Exs. P-W.

Matthew Shafe, the named inventor of U.S. Patent No. 6,035,429 cited in the IPR petition challenging the '533 patent, also resides in the Northern District of California.[1]  *Id.*, ¶ 10, Ex. I. Mr. Shafe is likely to have knowledge concerning his and other prior art to the claimed invention.

Further, many California-based defendants in related cases have already settled, and have likely taken licenses to the '533 patent.  Watkins Decl., ¶¶ 4, 16; Exs. C, O.  A significant number of these third parties – including Acer America Corp., Apple, Inc., Asus Computer International, Fujitsu America, Inc., Hewlett-Packard Company, Lexar Media, Inc., and SanDisk Corporation – have principal offices in Northern California and are likely to have information relevant to damages.  *Id.*, ¶ 16; Ex. O.

### D.    Two Other Defendants Have Also Moved to Transfer to the Northern District of California

As part of its Third Wave, of cases PanTaurus also sued California-based companies Hulu, LLC and OPower Inc. for infringement of the '533 patent, and accuses each of these companies of infringing the patent for substantially the same conduct as Adobe – use of Hadoop Distributed File Systems (HDFS).  *PanTaurus LLC v. Hulu, LLC*, No. 1:14-cv-445-RC (commenced Sept. 2, 2014), at Dkt. 1 (Complaint) ¶¶ 13-14; *PanTaurus LLC v. OPower, Inc.*, No. 1:14-cv-517-RC (commenced Oct. 10, 2014), at Dkt. 1 (Complaint) ¶¶ 13-14.  Both of these Defendants have moved this Court to transfer the respective actions to the District Court for the Northern District of California.[2]  These motions are currently pending before this Court.

---

[1] On August 29, 2014, Unified Patents Inc. filed a petition seeking inter partes review of the '553 patent.  Watkins Decl. ¶ 10; Ex. I.  On December 2, 2014, the inter partes review was terminated due to a settlement agreement between Unified Patents Inc. and PanTaurus.  Watkins Decl. ¶ 29; Ex. DD.  Adobe understands that it is not estopped from asserting the prior art that was the subject of the inter partes review as part of its validity defenses and counterclaims in this litigation.

[2] Hulu, LLC filed a Motion to Transfer to N.D. Cal. on November 24, 2014.  *PanTaurus LLC v. Hulu, LLC*, Case No. 1:14-cv-445-RC, at Dkt. 15.  PanTaurus's response is currently due February 23, 2015.  *Id.* at Dkt. 27.  OPower,

## III.   __ARGUMENT__

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice.   28 U.S.C. § 1404(a).   Thus, the first inquiry when analyzing a transfer under section 1404(a) is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."   *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curium) (hereinafter *In re Volkswagen I*).

Once that threshold inquiry is met, the district court must then consider the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case.   *Blue Spike, LLC v. Adobe Sys., Inc. et al.*, Nos. 6:12-cv-499 and 6:12-cv-564, 2014 U.S. Dist. LEXIS 50781, at *98-*99 (E.D. Tex. Mar. 13, 2014) (*citing Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963) (Watkins Decl., ¶ 31, Ex. FF); *In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1197–98 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008)).   The party seeking the transfer must show good cause, which requires that the moving party demonstrate that the proposed transferee venue is "clearly more convenient than the venue chosen by the plaintiff[.]"   *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (hereinafter *In re Volkswagen II*).   A convenience determination consists of balancing the convenience and inconvenience resulting from plaintiff's chosen venue in comparison with those of the proposed venue, and includes examining several private and public interest factors[3], none

---

Inc. filed a Motion to Transfer to N.D. Cal. on December 23, 2014.  *PanTaurus v. OPower, Inc.*, Case No. 1:14-cv-517-RC, at Dkt. 12.  PanTaurus's response is currently due February 25, 2015.  *Id.* at Dkt. 19.

[3] The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive."  *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of

of which has dispositive weight.  *Id.*

This Court has applied these factors many times, frequently granting motions to transfer venue.  *Blue Spike, LLC v. Adobe Sys., Inc. et al.*, Nos. 6:12-cv-499 and 6:12-cv-564, 2014 U.S. Dist. LEXIS 50781 (E.D. Tex. Mar. 13, 2014) (Watkins Decl., ¶ 31, Ex. FF); *Digital Reg of Tex. LLC v. Adobe Sys., Inc.*, Case No. 6:11-cv-305, 2012 U.S. Dist. LEXIS 114452 (E.D. Tex. Mar. 28, 2012) (Watkins Decl., ¶ 32, Ex. GG); *FutureVision.com, LLC v. Time Warner Cable, Inc.* Case No. 6:12-cv-386, 2013 U.S. Dist. LEXIS 144601 (E.D. Tex. Apr. 22, 2013) (Watkins Decl., ¶ 36, Ex. KK); *Ingeniador, LLC v. Adobe Sys., Inc.*, Case No. 2:12-cv-00805-JRG, 2014 U.S. Dist. LEXIS 3308 (E.D. Tex. Jan. 10, 2014) (Watkins Decl., ¶ 33, Ex. HH); *Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011).

The plaintiff's choice of venue is not a factor in this analysis.  *In re Volkswagen II*, 545 F.3d at 314–15 & n.10.  Rather, the weight of the plaintiff's choice of venue is reflected in the defendant's burden of proving that the proposed venue is "clearly more convenient" than the transferor venue.  *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech.*, 551 F.3d at 1320.  Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive.  *In re Volkswagen II*, 545 F.3d at 315.

A.    <u>**Venue is Proper in the Northern District of California**</u>

As a threshold inquiry, determination must be made as to "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Blue Spike, LLC*, 2014 U.S. Dist. LEXIS 50781, at *98 (*citing In re Volkswagen I*, 371 F.3d 201, 203 (Fed. Cir. 2004)).  A case could have been brought in the transferee court if that court has

---

unnecessary problems of conflict of laws or in the application of foreign law."  *In re Volkswagen I*, 371 F.3d at 203. (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)).

subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and if it is a proper venue for the case.  *Id.*  There is no question that the Northern District of California has subject matter jurisdiction over PanTaurus's patent claims under 28 U.S.C. §§ 1331 and 1338(a).  Nor is there any doubt that the Northern District of California has personal jurisdiction over Adobe and is a proper venue for this case because, as discussed above, Adobe regularly conducts business, maintains its headquarters, and employs the bulk of its personnel in that district.  *See* 28 U.S.C. § 1391(b).

**B.      Private Interest Factors Strongly Favor Transfer to the Northern District of California**

In deciding whether to transfer a case, courts consider a number of private interest factors, which include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re Volkswagen I*, 371 F.3d at 203.  At least three of the four factors weigh in favor of transfer to the Northern District of California.

1.      Easier Access to Sources of Proof Favors the Northern District of California

A court deciding whether to transfer venue must consider which party will likely "have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues."  *Blue Spike*, 2014 U.S. Dist. LEXIS 50781, at *101-102.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal citations and quotations omitted).  The location of documents and evidence remains an important factor, despite advances in data transfer technologies.  *Id.*

Here, as discussed above, Adobe's documents relevant to this case are most readily accessible from Northern California, and Adobe employees with relevant knowledge who are likely to testify regarding the Accused Instrumentalities are located in Northern California.  For example, Adobe obtained the Hadoop software packages from Palo Alto-based company Cloudera, Inc., which is located in the Northern District of California.  Javangula Decl., ¶¶ 9-10, Ex. A; Watkins Decl., ¶¶ 8-9, Exs. G-H.  Additionally, companies such as Oracle and NetApp and witnesses likely to have relevant knowledge concerning prior art systems are located in Northern California.  Watkins Decl., ¶¶ 11-15, Exs. J-N.  Likely third-party licensees of the '533 patent, such as Apple, Asus and Dropbox, are also headquartered in Northern California and likely to possess information relevant to damages. *Id.*, ¶¶ 4, 16, Exs. C , O.

In contrast, PanTaurus was formed less than three months before filing its first lawsuit in this District.  Watkins Decl., ¶¶ 2, 4; Exs. A, C.  The limited documents created since PanTaurus's formation, or brought to Texas for purposes of its litigations, do not merit keeping this case in Texas. *Blue Spike*, 2014 U.S. Dist. LEXIS 50781, at *102; *see also Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011) (noting that the accused infringer's documents are usually more relevant, and that documents transferred to a venue in anticipation of litigation should not be considered).  There is no indication that *any* relevant evidence or witnesses are located in the Eastern District of Texas.  The named inventor appears to reside in Virginia.  Watkins Decl., ¶ 5; Ex. D.  The attorney who prosecuted the '533 patent works in Washington, D.C. *Id.* ¶ 25; Ex. Y.  Because PanTaurus only recently formed in Texas (*id.* ¶ 2; Ex. A), and its business appears limited to suing on the '533 patent, it is highly unlikely that few if any relevant documents are located here.

Because the majority of key documents and witnesses are located in Northern California, a

consideration of the access to sources of proof strongly favors transfer to the Northern District of California. *Blue Spike*, 2014 U.S. Dist. LEXIS 50781, at *102 ("On balance, the location of Defendant's [Adobe] sources of proof far outweighs the presence of Plaintiff's documents and servers in Texas.").

> 2. Availability of Compulsory Process Favors the Northern District of California

All potential witnesses with relevant information must be taken into account in analyzing the availability of compulsory process, regardless of their likelihood of testifying at trial. *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). A venue is favored when it has subpoena power to compel attendance at deposition and trial over the majority of non-party witnesses. *Blue Spike*, 2014 U.S. Dist. LEXIS 50781, at *103. While courts analyze the convenience of both party and non-party witnesses, "the convenience to non-party witnesses is afforded greater weight than that of party witnesses." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 875 (E.D. Tex. 2013). (citation omitted).

Many third-party witnesses live in or near the Northern District of California. Such critical witnesses include companies that provided the Hadoop software used in Adobe's Accused Instrumentalities, persons who developed prior art, and former defendants that likely licensed the '533 patent. *See supra* at II(B)–(C). Adobe employees knowledgeable about the development and use of the Accused Instrumentalities, as well as financial information relevant to damages, all reside in Northern California. Javangula Decl., ¶¶ 5-6. As discussed above, many members of the Apache Software Foundation responsible for the accused HDFS functionality reside in Northern California. These individuals will be able to testify about the

development, usage, marketing, and any revenues associated with HDFS.  Moreover, only a district court in the Northern District of California has subpoena power over these individuals.

Further, a number of developers of significant prior art, such as Sun and NetApp, and their former and current employees, are located in Northern California.  These individuals will be able to testify regarding the state of the art at the time of filing the asserted patents, including the presence and functionality of competing technologies and the value of the alleged novelty in the patents.

Adobe is not aware of any potential witnesses in the Eastern District of Texas.

Accordingly, since the Northern District of California has absolute subpoena power over a significant number of known prior art witnesses, the availability of such power favors transfer to that district.  *Blue Spike*, 2014 U.S. Dist. LEXIS 50781, at *103; *Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*, No. 2:10-CV-109, 2011 U.S. Dist. LEXIS 15408, at *16 (E.D. Tex. Jan. 12, 2011) (Watkins Decl., ¶ 37, Ex. LL) (finding that the cost to witnesses factor weighed in favor of transfer where more witnesses would be inconvenienced by not transferring and no witness lived within 100 miles of the transferor courthouse).

3.      Cost of Attendance for Willing Witnesses Favors the Northern District of California

 Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance traveled." *Blue Spike*, 2014 U.S. Dist. LEXIS 50781, at *104 (*citing In re Volkswagen I*, 371 F.3d at 204-05).

Here, with respect to party witnesses, Adobe's likely witnesses in this action, including its engineers, managers, and executives, reside and work within the Northern District of

California.  Third party witnesses knowledgeable about the development of the accused HDFS software and about the prior art are likewise located in Northern California.  These key party and third-party witnesses in California would incur significant travel costs in connection with the approximately 2000-mile trip to Beaumont, Texas.  For example, there are no direct flights between any city in California, and Beaumont, Texas.  Watkins Decl., ¶ 26; Ex. Z; *see In re TS Tech.*, 551 F.3d at 1320 (holding that it was error not to "considerably weigh" the additional 900 miles witnesses would need to travel to attend trial in Texas).  It would also be highly disruptive to Adobe's business if key employees are required to travel to the Eastern District of Texas, spending an entire day to travel to and from Beaumont.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (considering "losses in productivity from time spent away from work").  (citation omitted).  These costs would be minimized by transferring this case to the Northern District of California where Adobe's offices and key third-party witnesses are located.

Plaintiff PanTaurus may claim it is more convenient to litigate in its chosen forum, but its litigation-inspired presence in Texas should be accorded no weight in deciding whether to transfer this case.  *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) ("MedIdea's presence in Texas appears to be recent, ephemeral, and an artifact of litigation . . . [it] therefore has no presence in Texas that should be given weight in the transfer analysis."); *Software Rights Archive, LLC v. Google, Inc.,* No. 2:07-CV-511, 2010 U.S. Dist. LEXIS 73972, at *16 (E.D. Tex. July 22, 2010) (Watkins Decl., ¶ 38, Ex. MM) ("[E]stablishing a principal place of business in this district shortly before filing suit does not create a local interest.").

Thus, the locations of both party and non-party witnesses also favor transfer to the Northern District of California.  *Blue Spike*, 2014 U.S. Dist. LEXIS 50781, at *103-*104.

4.      All Other Concerns Weigh in Favor of Transfer

The remaining considerations also favor transfer to the Northern District of California. First, this case is still in its infancy as the case management conference is almost two months away, no scheduling order has been issued, and no discovery has taken place.  *Internet Machs. LLC v. Alienware Corp.*, No. 10-cv-023, 2011 U.S. Dist. LEXIS 66207, at *26-*28 (E.D. Tex. Jun 7, 2011) (Watkins Decl., ¶ 34, Ex. II).  (transfer is more convenient when request precedes initial disclosures or the entry of a scheduling order).

Second, the pendency of other related cases in this District does not counsel against transfer.  This Court has rejected the argument that filing numerous cases against separate defendants in a single district may be used to establish venue.  *GeoTag, Inc. v Zoosk, Inc.*, No. 2:11-cv-403-MHS, Dkt. No. 114, at 11 (E.D. Tex. Jan. 14, 2013) ("The Court will not permit the existence of separately filed cases to sway its transfer analysis.  Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district.") (citing Leahy-Smith America Invents Act, 35 U.S.C. § 299 (2011)); *Patent Harbor, LLC v. Twentieth Century Fox Home Entm't, LLC,* No. 6:10-CV-607, 2012 U.S. Dist. LEXIS 73149, at *14-15 (E.D. Tex. May 25, 2012) (Watkins Decl., ¶ 39, Ex. NN) ("The Federal Circuit has made it clear that *Vistaprint* and cases like it are an exception to the general rule that 'the proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation.'") (quoting *In re Morgan Stanley*, 417 Fed. App'x. 947, 950 (Fed. Cir. 2011)).

Here, PanTaurus was formed in this District less than three months before it began filing over 56 lawsuits in this District against defendants concerning different, mostly non-overlapping products and services.  Permitting PanTaurus to manufacture venue in this fashion would run counter to 28 U.S.C. § 1404(a), which is designed to temper forum shopping.  *See id*., at 11; *see*

*also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient").

### C. Public Interest Factors Support Transfer to the Northern District of California

In addition to private interest factors, courts also consider public interest factors in deciding whether transfer is appropriate. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law." *In re Volkswagen I*, 371 F.3d at 203. (citing *Piper Aircraft Co.*, 454 U.S.at 241 n.6). At least two of these factors weigh in favor of transfer, while the other two are neutral.

#### 1. Relative Court Congestion Supports Transfer

The Eastern District of Texas is currently more congested than the Northern District of California for patent litigation. For the year 2013, the Eastern District of Texas ranked first in the number of new patent cases filed, at 1,495, an increase of 248 over the prior year. Watkins Decl., ¶ 24; Ex. X. In the same year, the Northern District of California saw only 249 new patent cases filed, down 11 from the prior year. *Id.* The 7 U.S. District Judges and 8 Magistrate Judges in this District are burdened with more recently-filed patent cases than the 23 U.S. District Judges and 10 Magistrate Judges of the Northern District of California. Watkins Decl., ¶¶ 27-28; Exs. AA-BB. Given its lower caseload per judge, the Northern District of California resolves cases more quickly pre-trial than the Eastern District of Texas. Watkins Decl., ¶ 24; Ex. X (N.D. Cal. has a median time interval from filing to disposition of 8.2 months for cases that do not go to trial, while E.D. Tex. has a median time of 9.0 months.). Thus, this factor favors transfer.

2.     Local Interest Favors the Northern District of California

While the location of the alleged injury is generally an important consideration, this Court has recognized that "when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *Blue Spike*, 2014 U.S. Dist. LEXIS 50781, at \*109-\*110 (*citing In re Nintendo*, 589 F.3d at 1198). However, though the Accused Instrumentalities in this case are available nationwide, the Northern District of California has a particularized local interest in resolving this dispute because the Accused Instrumentalities were developed and are still maintained and managed by Adobe staff, engineers, and managers there. Local interest, thus, strongly favors transfer to the Northern District of California. *See*, *e.g.*, *Network Prot. Sciences, LLC v. Juniper Networks, Inc.*, No. 10-cv-224-JRG, 2012 U.S. Dist. LEXIS 7575, at \*21 (E.D. Tex. Jan. 23, 2012) (Watkins Decl., ¶ 35, Ex. JJ) (local interest favored transfer from Texas where plaintiff had "small and fairly recent operations" to California where defendants were headquartered, developed the accused products, and employed thousands of people).

3.     Both Forums Are Familiar with the Governing Law

This Court and the Northern District of California are equally familiar with patent law. Thus, this factor is neutral.

4.     There is No Conflict of Law Question

This case does not implicate conflicts of law and thus this factor is neutral.

## IV.     **CONCLUSION**

For the foregoing reasons, balancing all of the private and public factors demonstrates that the Northern District of California is clearly a more convenient venue than the Eastern District of Texas for this action. Adobe respectfully requests that this Court grant the requested transfer to the Northern District of California.

Respectfully submitted,

Dated: January 30, 2015

*/s/ Jonathan K. Waldrop, with permission by*
*Allen F. Gardner*
Michael E. Jones
Texas Bar No. 10929400
mikejones@potterminton. com
Allen F. Gardner
Texas Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON, P.C., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax:  (903) 595-0846

Jeffrey J. Toney
Georgia Bar No. 714615
jtoney@kasowitz.com
KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP
Two Midtown Plaza
1349 West Peachtree Street, N.W., Suite 1500
Atlanta, Georgia 30309
Telephone:  404-260-6080
Facsimile:  404-260-6081

Jonathan K. Waldrop
California Bar No. 297903
jwaldrop@kasowitz.com
Darcy L. Jones
Georgia Bar No. 100155
djones@kasowitz.com
Robert P. Watkins III
California Bar No. 298571
rwatkins@kasowitz.com
Heather S. Kim
California Bar No. 277686
hkim@kasowitz.com
KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
Tel:  (650) 453-5170
Fax:  (650) 453-5171

Attorneys for Defendant
ADOBE SYSTEMS INCORPORATED

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 30, 2015.

*/s/ Allen F. Gardner*
Allen F. Gardner

**CERTIFICATE OF CONFERENCE**

I certify that counsel for Defendant Adobe Systems Incorporated has complied with the meet and confer requirement in Local Rule 37 CV-7(h).   The conference was conducted via telephone on January 28, 2015.   Allen Gardner participated for Defendant; John Harvey participated for Plaintiff PanTaurus, LLC.   Counsel for PanTaurus informed counsel for Defendant that this motion is opposed.   An agreement was not reached because the parties have opposing views as to whether this case should be transferred.   The discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Allen F. Gardner*
Allen F. Gardner